**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

Kenneth Elliott, Susan Young, and
Gloria Balala Saito,

Plaintiffs,

Case No. 4:22-cv-91-MLB

v.

Warrantech Consumer Product
Services, Inc. and Tag Warranty
Corporation,

Defendants.

_____/

## OPINION & ORDER

Plaintiffs are three consumers who each allege a variation of the same story: they bought a home appliance, they purchased an "extended service plan" for their appliance, the extended service plan contained a "no lemon guarantee" requiring Defendants to replace the appliance if— loosely speaking—it needed more than three repairs in the same year, Plaintiffs' appliance ultimately did need more than three repairs in the same year, and Defendants failed to replace it in violation of their guarantee.  Plaintiffs also claim Defendants have done the same thing—

"fail[ed] to honor their no lemon guarantee"—to other similarly situated consumers around the country.  (Dkts. 1 ¶¶ 42, 45; 62 at 1–2.)  Based on these allegations, Plaintiffs filed this putative class action against Defendants for breach of contract (Count 1), unconscionability (Count 2), and unjust enrichment (Count 3).  Plaintiffs now move to certify the following class for their breach-of-contract claim:

> All natural persons domiciled in the United States or its territories who purchased a Warrantech extended service plan containing a "no lemon guarantee" who have had more than three (3) service calls or repair attempts within any twelve (12) month period between April 2016 and the present and have not received a replacement product.

(Dkt. 62 at 1.)

This class definition encompasses at least *four* different no lemon guarantees.  Each guarantee, like Plaintiffs', generally requires a replacement after more than three repairs in the same year.  But the details of each guarantee include important differences.  Those differences undermine the cohesion of Plaintiffs' proposed class.  So the Court denies Plaintiffs' motion for class certification.  *See Amchem Prod.,*

*Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (class must be "sufficiently cohesive to warrant adjudication by representation.").[1]

## I.    Legal Standard

To prevail on their motion for class certification, Plaintiffs must show their proposed class (1) "is adequately defined and clearly ascertainable"; (2) satisfies the "numerosity, commonality, typicality, and adequacy" requirements in Rule 23(a); and (3) "satisfies at least one of the three requirements listed in Rule 23(b)." *Little v. T-Mobile USA, Inc.*,

---

[1] Plaintiffs' motion also seeks to certify a class for Plaintiffs' unjust enrichment claim. But it does so in only the most perfunctory way. (*See* Dkts. 62 at 2; 63-1 at 6, 32, 34.) Indeed, Plaintiffs admit they "*excluded* their briefing on unjust enrichment in order to reach the page limit." (Dkt. 63-1 at 32 n.126 (emphasis added).) That strategic choice waives the argument. *See Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019) ("For an issue to be adequately raised in [a] brief, it must be plainly and prominently raised and must be supported by arguments and citations to the record and to relevant authority."); *U.S. S.E.C. v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 811–12 (11th Cir. 2015) (a party must "flesh out [his] arguments"; he "abandons a claim when he either makes only passing references to it or raises in a perfunctory manner without supporting arguments and authority"). At a minimum, Plaintiffs have not met their burden to show the Court should certify a class for their unjust enrichment claim. *See Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 295 (5th Cir. 2001) ("A class should be certified on a claim-by-claim basis."); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) ("Due to the necessity of [an] inquiry into the individualized equities attendant to each class member, courts, including ours, have found unjust enrichment claims inappropriate for class action treatment.").

691 F.3d 1302, 1304 (11th Cir. 2012).  Under the Rule 23(b) requirement at issue in this case—the predominance requirement in Rule 23(b)(3)—Plaintiffs must show "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).[2]

Whether questions are common or individual depends on "how the parties will prove them at trial."  *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016).  "Common questions are ones where the same evidence will suffice for each member."  *Id.*  "[I]ndividual questions are ones where the evidence will vary from member to member."  *Id.*  "Common issues . . . predominate only if they have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the

---

[2] Plaintiffs' motion explicitly seeks certification under Rule 23(b)(3) and says nothing about the alternative requirements in Rule 23(b)(1)–(2). (*See* Dkt. 62.)  Plaintiffs' brief (a separate document) does include a stray reference to "Federal Rule of Civil Procedure 23(a) and *(b)(2)*," but the Court assumes this is a typo because Plaintiffs never actually engage with the substance of Rule 23(b)(2) or attempt to make the showing required thereunder.  (Dkt. 63-1 at 24 (emphasis added).)  Either way, Plaintiffs have not shown certification is warranted under Rule 23(b)(2). (*Cf.* Dkt. 70-1 at 30–32 (Defendants arguing Rule 23(b)(2) is inapplicable on the merits).)

claim or claims of each class member." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). That is, "the common, aggregation-enabling, issues in the case [must be] more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). This is a "demanding" standard that looks to the "relative importance of the common versus individual questions" and the "quantum of evidence introduced" for each question. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *Brown*, 817 F.3d at 1235. "If common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class should not have a substantial effect on the substance or quantity of evidence offered." *Vega*, 564 F.3d at 1270. But "[i]f after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, their claims are not suitable for class certification under Rule 23(b)(3)." *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010).

As the parties seeking certification, Plaintiffs "bear[] the burden of establishing every element of Rule 23," including predominance. *Vega*, 564 F.3d at 1267. This is "a burden of *proof*, not a burden of pleading"; Plaintiffs "must affirmatively demonstrate [their] compliance with Rule 23 by proving that the requirements are *in fact* satisfied." *Brown*, 817 F.3d at 1234. "A district court that has doubts about whether the requirements of Rule 23 have been met should refuse certification." *Id.* at 1233–34. Indeed, there is a "presumption . . . *against* class certification because class actions are an exception to our constitutional tradition of individual litigation." *Id.* at 1233 (emphasis added).

## II.   Discussion

As a threshold matter, Plaintiffs' motion lacks the "analytical rigor and precision" required to establish predominance. *Vega*, 564 F.3d at 1269. A motion for class certification should "identify the parties' claims and defenses and their elements," "classify these issues as common questions or individual questions," justify those classifications, and explain—through "rigorous analysis"—why "the common questions predominate over the individual ones." *Brown*, 817 F.3d at 1234–35. Plaintiffs (who are represented by counsel) do none of that here. They

simply recite the general legal standards for commonality and predominance, quote a few cases about the appropriateness of class certification in certain breach-of-contract cases (which are inapplicable here), summarize two cases without any real application, and offer a terse analysis littered with vague and conclusory assertions. (*See* Dkt. 63-1 at 28–32.)[3]   Plaintiffs essentially "back[] into" the predominance

---

[3] Plaintiffs' terse analysis is as follows:

> To prove the classwide contract claims here, Plaintiffs will offer evidence of (1) contracts between the class members and [Defendants]; (2) classwide proof of how [Defendants'] uniform classification of repairs as "sub RO repairs" breached the "no lemon guarantee" portion of the contract; and (3) the amounts of funds [Defendants] converted due to their own use by this practice.  Notably, all of this evidence will come from [Defendants'] admissions and record—not from the Plaintiffs or the class members—and all of this evidence will be common to the entire class.  None of this evidence will vary from class member to class member.  In the words of the Eleventh Circuit, "the addition of more plaintiffs would leave the quantum of evidence introduced as a whole relatively undisturbed." *Brown*, 817 F.3d at 1235. Thus, common issues are "likely to predominate."  *Id.* . . . [Defendants'] contracts with Plaintiffs and the class members are identical with respect to the no lemon guarantee.  [Defendants'] liability turns on whether those contracts permit [Defendants] to disregard the "no lemon guarantee" based on internal procedures.  That issue predominates.

(Dkt. 63-1 at 30–32.)

requirement and "rely[] on a reviewing court to connect the dots." *Vega*, 564 F.3d at 1269.  That is "not enough."  *Id.*[4]

Plaintiffs' predominance theory—to the extent the Court understands it—also fails on the merits.  The theory seems to be: (1) Defendants construe multiple attempts to fix the same appliance problem as a single repair under Defendants' no lemon guarantees; (2) this construction is wrong and prevents Defendants from giving certain customers like Plaintiffs a replacement product to which they are entitled (since Defendants mistakenly conclude such customers lack the four "repairs" necessary to trigger a replacement); and (3) whether Defendants' construction is permissible is a common question that predominates over the individual questions in this case.  (*See* Dkt. 63-1 at 5, 15–17, 30–32.)  If this really is Plaintiffs' theory, the Court is unpersuaded by it.[5]

---

[4] The Eleventh Circuit's instructions in *Brown* and *Vega* were directed to the district court.  But they apply with equal force to the party seeking certification.

[5] Plaintiffs repeatedly fault Defendants for classifying multiple repair attempts as "sub-Repair Orders" (sub-ROs) rather than "Repair Orders" (ROs) in Defendants' internal claims system.  But, presumably, Plaintiffs' real beef is with Defendants' legal construction of the attempts as something other than a qualifying repair under the language of the

First, it is not clear that the validity of Defendants' construction is even a common question. Plaintiffs seek to certify a class of individuals who purchased extended service plans that contain one of four different no lemon guarantees. (*See* Dkt. 63-2 at 3, 36 (first guarantee); *id.* at 13, 24, 59, 66 (second guarantee); *id.* at 45 (third guarantee); *id.* at 52 (fourth guarantee).) And some of these guarantees support Defendants' construction more than others. For example, some exclude "service recalls"—which Defendants define as multiple attempts to fix the same problem within a prescribed period—from the definition of a repair. (*See* Dkts. 70-1 at 10 & n.18; 70-5 ¶¶ 7–9.) Others require repairs to be "completed"—not just attempted—before they count towards a replacement. (*Compare, e.g.*, Dkt. 63-2 at 45 (completion language) *with* Dkt. 63-2 at 13 (no completion language).) The Court takes no position on whether these features support Defendants' construction. But Defendants think they do, meaning both arguments are likely to play a role in this litigation. (*See* Dkt. 70-1 at 10 & n.18, 23, 26–27, 29 & n.130.) Because these arguments about the validity of Defendants' construction

---

no lemon guarantees. To the extent the Court is wrong about that—or has failed to divine Plaintiffs' certification theory in any other respect—the responsibility for that failure lies with Plaintiffs alone.

apply only to some guarantees—and thus only to some members—the validity of Defendants' construction is not "subject to generalized proof on a class-wide basis." *Cardiovascular Care of Sarasota, P.A. v. Cardinal Health, Inc.*, 2009 WL 928321, at *5 (M.D. Fla. Apr. 3, 2009). "[T]he evidence [and argument] will vary from member to member." *Brown*, 817 F.3d at 1234.

Even if the validity of Defendants' construction were a common issue, the Court cannot say it predominates over the totality of the individual issues in this case. The core elements of a breach-of-contract claim are the existence of a contract, breach, and resultant damages. *See O'Gara ex rel. Est. of Portnick v. Countrywide Home Loans, Inc.*, 282 F.R.D. 81, 90 & n.14 (D. Del. 2012). The first and last elements raise individual issues because, as best the Court can tell, at least some of the evidence will "vary from member to member." *Brown*, 817 F.3d at 1234; *see Vega*, 564 F.3d at 1272 (absent "a common contract" applicable to "all class members," plaintiff "could not utilize identical evidence on behalf of every [class] member" to prove the existence of a contract); (Dkt. 63-1 at 31 n.123 (Plaintiffs noting "damages may require evidence specific to each class member")).

10

The second element (breach) might include the common issue Plaintiffs identify (Defendants' classification of multiple repair attempts as a single repair).  But it also includes other issues because, even assuming a factfinder decided the common issue in Plaintiffs' favor, that would not by itself show Defendants withheld a replacement product in violation of the applicable guarantee.  Plaintiffs must go on to show they were actually entitled to a replacement—and did not receive one—under the totality of the language in the guarantee.  The issues wrapped up in that showing are substantially individual because, of the four guarantees to which the class was subject, each contains "materially different language" that calls for different evidence and argument.  *Sacred Heart*, 601 F.3d at 1175.

For example, one guarantee promises a replacement only if the requisite three prior repairs were "for the same problem on an individual component of [the] Product" (Dkt. 63-2 at 45); another says the prior repairs must have been for "the same problem" even if they didn't involve "an individual component" (Dkt. 63-2 at 52); others say nothing about either requirement (Dkt. 63-2 at 3, 13, 24, 36, 59, 66).  One requires the *fourth* repair to be for "the same problem" as the prior repairs (Dkt. 63-2

at 52), another requires it to be for "the identical problem" (Dkt. 63-2 at 45), and others include neither limitation (Dkt. 63-2 at 3, 13, 24, 36, 59, 66). One specifically excludes up to eleven repair services from the definition of "repair" (Dkt. 63-2 at 3, 36), another excludes nine (Dkt. 63-2 at 45), another excludes two (Dkt. 63-2 at 52), and another lists no exclusions at all (Dkt. 63-2 at 13, 24, 59, 66).[6] The varying extent to which the guarantees incorporate these exclusions is significant because the exclusions cover standard repair services that several class members have likely received (services such as "[p]reventative maintenance checks, manufacturer or service recalls, cleaning, product diagnosis, customer education, accessory repairs/replacements, consumable components, computer software-related problems," and repairs during "the manufacturer's warranty period").

These contractual differences will inevitably result in different evidence/argument for different class members on the issue of whether Defendants withheld a replacement in violation of the applicable

---

[6] These numbers represent only a rough count. The parties failed to count/parse the exclusions in each guarantee or identify/analyze any related exclusions that appear in the contracts more broadly. The Court will not do that work for them.

guarantee.  Indeed, Defendants have already said they will use the unique aspects of each guarantee to assert "defenses . . . unique to individual class members." *Sacred Heart*, 601 F.3d at 1170; (*see* Dkt. 70-1 at 9, 26–29, 36).  As a result, "common issues may well be submerged by individual ones." *Sacred Heart*, 601 F.3d at 1170; *see Vega*, 564 F.3d at 1274 (no predominance where defendant "apparently would proffer individualized and varying evidence to defend against claims of individual class members").  "[P]laintiffs simply cannot advance a single collective breach of contract action on the basis of multiple different contracts where those contracts contain materially different language." *Sacred Heart*, 601 F.3d at 1175.

Individualized questions about the Article III standing of Plaintiffs' class members also suggests predominance is a problem here.  Plaintiffs' putative class includes all consumers with "more than three (3) service calls or repair attempts" in a single year, even if those consumers are not entitled to a replacement product under the specific terms of the applicable guarantee.  (Dkt. 62 at 1.)  This means Plaintiffs' class likely includes several members who suffered no Article III injury.  "[A] great many persons" could fall into this category, and determining who does—

and who does not—will presumably "require individualized inquiries." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019).  The prospect of such inquiries further weighs against a finding that common issues predominate.  *See id.* at 1275 ("When this standing question is added to the mix, individualized questions may predominate over common issues susceptible to class-wide proof.").

Given the totality of the circumstances here—including Plaintiffs' deficient briefing, Plaintiffs' failure to identify a clear set of common issues, the individual issues raised by the variation in Defendants' no lemon guarantees, Plaintiffs' failure to address those issues or the underlying variation in the guarantees, and the standing concerns triggered by Plaintiffs' class definition—the Court concludes Plaintiffs have not met their burden to show by a preponderance of the evidence that common questions predominate over individual ones in this case. Even after a factfinder resolves the single common issue that Plaintiffs identify—the validity of Defendants' construction of multiple repair attempts as a single repair—"significant questions concerning ultimate liability [and standing] would remain for many class members." *Vega*, 564 F.3d at 1274.  That means "common questions [do] not predominate."

14

*Id.* So the Court denies Plaintiffs' motion for class certification. *See Sacred Heart*, 601 F.3d at 1175–76 ("defendant's [common] course of conduct" did not establish predominance given "the substantial variation in the contracts and the corresponding rights and duties they provide the plaintiffs").[7]

## III. Conclusion

The Court **DENIES** Plaintiffs' Motion for Class Certification (Dkt. 62).

---

[7] Plaintiffs also fail to offer a sufficiently robust and particularized analysis of the choice-of-law issues in this case—and the impact of those issues on certification here—even though they seek to certify a nationwide class. *See Margolius v. Metlife Ins. Co. of Connecticut*, 2015 WL 11251737, at *4 (S.D. Fla. July 7, 2015) ("As the party seeking certification, Plaintiff must provide an extensive analysis of state law variations to reveal whether these pose insuperable obstacles."); *Bishop's Prop. & Invs., LLC v. Protective Life Ins. Co.*, 255 F.R.D. 619, 624 (M.D. Ga. 2009) ("The prospect of having to apply different state laws to different claims requires that particular scrutiny be given to requests for nation-wide certification of state law breach of contract claims."); *Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 736 (S.D. Fla. 2007) ("The need to apply the nuances of the contract law of fifty states to Plaintiff's proposed class leads to the conclusion that common issues of law or fact do not predominate."). Defendants raised this issue in their response brief (along with several other issues relevant to this Order, including the variation among Defendants' no lemon guarantees). (*See* Dkt. 70-1 at 37–39.) Plaintiffs never filed a reply.

The Court also **DENIES** Plaintiffs' Motion to Seal (Dkt. 68) because (1) it is wildly overbroad in that it seeks to seal the entirety of Plaintiffs' class certification brief and supporting exhibits (including several deposition transcripts and contracts); (2) it is confusing because it also asks the Court to *unseal* those documents "provided the Court agrees none of the[] materials are properly subject to a permanent seal" (Dkt. 68 at 2); (3) it includes no legal arguments or discussion of authority; (4) the information sought to be sealed is largely Defendants', and Defendants have not asked the Court to seal it; and (5) Plaintiffs have not submitted a proposed order effectuating the relief they seek.  The Court **DIRECTS** the Clerk to **UNSEAL** Documents 63–67 and all attachments thereto. The Court also **DIRECTS** the Clerk to **UNSEAL** Document 70 and all attachments thereto because no one has formally moved to seal such documents or otherwise shown they should remain under seal.

Finally, given the Court's denial of Plaintiffs' motion for class certification, the Court **VACATES** its prior order requiring Defendants to produce the class discovery sought by Plaintiffs in the parties' joint discovery dispute statement (Dkt. 73).  Defendants need not produce that discovery.

**SO ORDERED** this 29th day of February, 2024.

_____

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE